UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILHELMUS BURGERS                          CIVIL ACTION

VERSUS                                     NO: 12-2009

KENNETH W. BICKFORD, ET AL.                SECTION: "A" (1)


## ORDER AND REASONS

Before the Court is a **Motion for Partial Summary Judgment to Enforce Promissory Notes and for Summary Judgment on Defendants' Counterclaims (Rec. Doc. 100)** filed by Plaintiff Wilhelmus Burgers. Defendants NOKWB, LLC, NOCAB, LLC, NODAB, LLC, Chappapeela Development Corporation, and French Creek Development, LLC oppose the motion. Also before the Court is a **Motion for Summary Judgment on Counterclaims of Defendants GJFB, LLC and GJBUF, LLC (Rec. Doc. 101)** filed by Plaintiff Wilhelmus Burgers. Defendants GJFB, LLC and GJBUF, LLC oppose the motion. The motions, set for submission on March 11, 2015, are before the Court on the briefs without oral argument. For the reasons that follow, the **Motion for Partial Summary Judgment to Enforce Promissory Notes and for Summary Judgment on Defendants' Counterclaims (Rec. Doc. 100)** is **GRANTED IN PART** and **DENIED IN PART**. The **Motion for Summary Judgment on Counterclaims of Defendants GJFB, LLC and GJBUF, LLC (Rec. Doc. 101)** is **GRANTED**.

1

**I. BACKGROUND**[1]

Plaintiff alleges that in 2007, Defendants Kenneth Bickford ("Bickford") and William Hindman ("Hindman") approached him seeking loans to finance the construction of a mixed-use residential development project in Tangipahoa Parish.  Plaintiff alleges that Bickford and Hindman informed Plaintiff that Bickford and members of Bickford's immediate family owned the land upon which the project would be constructed and that Hindman was an experienced real estate developer who would manage the project.

In 2009, Plaintiff entered into a formal agreement to fund the construction of the project.  According to Plaintiff, this agreement was represented in two related sets of documents – three identical promissory notes and three identical "Master Agreement, Development and Term Loan Agreements" executed between Plaintiff and three LLCs (NOKWB, LLC; NOCAB, LLC; and NODAB, LLC), each controlled separately by Bickford and his two brothers ("the NO LLCs").  Plaintiff understood the project would be developed in several phases, including an "Organizational Phase" to be completed in fifteen (15) months at a cost not to exceed $500,000.  Following this "Organizational Phase," actual construction was to begin during "Phase I" of the project at an anticipated cost of

---

[1] Due to the extensive alleged factual background, the Court will reproduce here only those aspects that are more directly related to the arguments in the present motions.

2

$1,300,000.  Plaintiff alleges that Bickford, Hindman, and Mason[2] sought a total loan contribution from him of $900,000, representing the full cost of the "Organizational Phase" and a portion of "Phase I" of the project.

Plaintiff alleges that the contracting parties agreed that Plaintiff's loan would be divided and separately allocated to the NO LLCs.  Plaintiff claims that the NO LLCs were to transfer title to the 21.41 acres of land (to be developed during Phase I) to Defendant Chappapeela Development Corporation ("Chappapeela") upon execution of Plaintiff's loans.  Ostensibly, Chappapeela was established as a corporate vehicle facilitating development of the project.

Plaintiff also alleges that in 2010 Defendants decided to move the project to land other than the 21.41 acres on which he had a multiple indebtedness mortgage with Chappapeela, thus undermining his security interest in the loans he had made.  He further contends that he has a security agreement with Chappapeela in "all general intangibles of the project," including options that Defendants allegedly used to induce him to enter into these funding agreements.  He states that these options, executed by GJFB, LLC and GJBUF, LLC[3] ("GJFB and GJBUF") in favor of the NO LLCs, would

_____

[2] Mason is no longer a party to this action.  (Rec. Doc. 17).

[3]According to Plaintiff, the principal officer of GJFB and GJBUF is the mother of the owners of the NO LLCs.

have allowed the project to expand onto adjacent land, but that the NO LLCs have since entered a partial cancellation of these options in favor of GJFB and GJBUF affecting a large portion of the land.

Plaintiff claims that as of November 2010 he had disbursed $384,000.00 to the project and was repeatedly assured that the project was progressing as planned.  However, Plaintiff alleges that his review of the project's records in April 2012 revealed misappropriation of the project's assets, including the funds he had loaned for the project.  Plaintiff claims that Defendants' actions therein directly contradicted prior verbal representations made to him, as well as the formal documents and agreements he had relied upon in contributing funds to the project.

On August 3, 2012, Plaintiff filed suit against Hindman, Bickford, the NO LLCs, as well as various legal entities formed to begin development of the property.  Plaintiff alleges causes of action for breach of contract, unjust enrichment, and violations of the Louisiana Unfair Trade Practices Act ("LUTPA").

On June 26, 2013, by amended complaint, Plaintiff joined GJFB and GJBUF as additional defendants, alleging causes of action against these parties for unjust enrichment[4] and violations of LUTPA and seeking to have the options declared as binding. Plaintiff also brought a revocatory action seeking rescission of

---

[4] The Court has since dismissed this particular claim. (Rec. Doc. 85).

the cancellation of options to purchase certain land adjacent to the 21.41 acre plot.  Furthermore, Plaintiff filed a Notice of Pendency of Action ("Lis Pendens") in Tangipahoa Parish covering the land described in the options to purchase executed by GJFB and GJBUF in favor of the NO LLCs.

In the instant motions, Plaintiff seeks summary judgment on the enforcement of its promissory notes entered into with the NO LLCs, arguing that there is no disputed issue of material fact as to the amount due or the maturing of the notes.  Plaintiff also seeks summary judgment on the counterclaims of Defendants NO LLCs, Chappapeela, and French Creek, as well as those of GJFB and GJBUF.

## II. APPLICABLE LAW

Summary judgment is appropriate only if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the nonmovants, "show that there is no genuine issue as to any material fact."[5]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[6]  Once the moving party has initially shown "that there is an absence of evidence to

---

[5] *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)).

[6] *Id.* (citing *Anderson*, 477 U.S. at 255).

5

support the nonmoving party's cause,"[7] the nonmovants must come forward with "specific facts" showing a genuine factual issue for trial.[8]   Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.[9]

**III. DISCUSSION**

**a. Motion for Partial Summary Judgment to Enforce Promissory Notes (no. 100)**

Plaintiff alleges that the principal balance on the promissory notes executed between him and each of the NO LLCs on September 30, 2009 became due on September 30, 2014.  He claims that he has paid out a total of $384,000, and that due to the terms of the promissory notes, he is now owed this amount ($384,000 or $128,000 per LLC) plus 10% attorneys' fees ($38,400 or $12,800 per LLC).

In response, the NO LLCs do not argue the amount that Plaintiff has contributed towards the project[10] nor the terms of the

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[8] *Id.* (citing Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[9] *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

[10] "That's the amount [$384,000] that he [Plaintiff] had funded on his commitment."  (Rec. Doc. 100-4; Depo. of K. Bickford, at 3).

promissory notes.[11]  Instead, they argue that Plaintiff cannot show that the contributed funds, other than the initial $50,000, were actually received by the NO LLCs.[12]  They do admit however that all of the advances went to Chappapeela Development Corp.

Plaintiff replies by arguing that a denial of receipt of the funds contradicts earlier testimony of Bickford.  Plaintiff also points out that the Master Agreement specifies Chappapeela as the entity to receive the funds for the project, and argues that the NO LLCs cannot avoid their obligation now by saying that checks were written to or at the direction of Chappapeela or its officer, Bickford.[13]

The parties do not dispute that there were identical promissory notes and "Master Agreements" between Plaintiff and each of the NO LLCs.  (Rec. Doc. 100-4; Depo. of K. Bickford, at 5-6).  They do not dispute that each of the promissory notes was for

---

[11] The maturity date was set five years from the execution of the notes – which took place on September 30, 2009.  (Rec. Doc. 100-3; Promissory Notes).  The terms of that note also provide that if legal proceedings have to be instituted to recover the amount due on the note, the makers of the note (the NO LLCs) must pay attorneys' fees set at 10% of the amount due.  *Id.*

[12] The NO LLCs do not dispute receiving this initial $50,000. (Rec. Doc. 100-5, at 4; Master Agreement at Article 2.01(a)) ("Owner hereby acknowledges receipt of Advances in the amount of $16,666.67 from Burgers.").

[13] Bickford serves as the sole officer of Chappapeela, while the NO LLCs are Chappapeela's shareholders.  (Rec. Doc. 32; Defs. Answer, at 2 (admitting this constitution of Chappapeela's structure)).

$166,666.67, or a total of $500,000. *Id.* at 6. They do not dispute that these were the only agreements entered into between Plaintiff and the NO LLCs. *Id.* They do not dispute that, other than the earlier contributions of the Bickford family, Plaintiff was the only party who contributed funds to this project. *Id.* at 3. There is no dispute as to the maturity date. There is no dispute that the Master Agreement, in the section titled "Loan Advances," states the following:

> Upon the terms and subject to the conditions hereof, Owner, through Chappapeela, may request an Advance in accordance with the provisions of Article 6. Until Owner notifies Burgers in writing of the withdrawal of Chappapeela's rights and powers, Burgers shall be able to rely conclusively upon the right of Chappapeela to make Advances on behalf of Owner. Owner agrees that only Chappapeela shall be authorized to request an advance.

(Rec. Doc. 100-5, at 5; Master Agreement at Article 2.02(c)).

Defendants now ask the Court to find a disputed issue of fact as to whether the NO LLCs can be held liable for the remaining $334,000 (in addition to the stipulated attorneys' fees) due to the fact that the checks were issued to Chappapeela Development Corp.

instead of to the NO LLCs.[14]  More specifically, counsel for the NO LLCs argues in the opposition that "[s]ave for the initial $50,000 advanced by Burgers, all of the funds went to Chappapeela Development Corporation," and thus "Burgers has failed to offer evidence to show that any of the entities against which he seeks judgment have received the funds he advanced, his Motion for Partial Summary Judgment against [the NO LLCs] must fail." (Rec. Doc. 107; Opp., at 4).

Via the explicit terms of their contract, Plaintiff was entitled to rely on Chappapeela to make and request advances on behalf of the NO LLCs.  The NO LLCs have presented no summary judgment evidence to dispute this understanding of the straightforward terms of the promissory notes and Master Agreement. A possible failure (*i.e.*, what is proposed as a disputed issue of fact) of Chappapeela to then distribute those advances to the NO LLCs, or Plaintiff otherwise following the directions of Chappapeela or Bickford as to how to disburse the funds, does not prejudice Plaintiff's rights under the promissory notes triggered by his performance and the subsequent maturing of the notes.

Thus, the Court grants summary judgment in favor of the

---

[14] The Court focuses on the $334,000 amount as the NO LLCs do not dispute the initial $50,000 of Plaintiff's contribution.  The copies of the checks, amounting to $334,000 show that they were issued to the following: one check to Elizabeth Title Agency, LLC ($100,000), two checks to Bickford (for $30,000 and $60,000), and two checks to Chappapeela Development Corp. ($48,000 and $96,000).

Plaintiff as to his claims against the NO LLCs regarding the enforcement of the terms of the promissory notes.  Each NO LLC is liable to Plaintiff for $128,000 in outstanding principal and $12,800 in attorneys' fees.

**b.   Counterclaims of the NO LLCs, Chappapeela, and French Creek Development, LLC (no. 100)**

Defendants NO LLCs, Chappapeela, and French Creek Development, LLC ("French Creek")[15] have filed counterclaims alleging that Plaintiff failed to "make certain advances on the loan" under the "Loan Agreement and the Business Plan" regarding the development project.  Defendants claim that this alleged breach of contract by Plaintiff halted the project and that Plaintiff required the development project "to expend loan proceeds for his personal benefit."  Defendants claim that this breach, as well as the nature of the injuries, entitles them to monetary damages of $1,148,243, prohibits Plaintiff from raising delay as a breach of contract regarding the development project, and results in "a cancellation of the note and mortgage held by [Plaintiff] and . . . a release of all further obligations to [Plaintiff]."  (Rec. Doc. 10; Counterclaim of Chappapeela, French Creek, and NO LLCs at §§ 8, 11-12).

In the present motion for summary judgment on these

---

[15] Plaintiff alleges that Hindman serves as the sole officer of French Creek.

counterclaims, Plaintiff raises four arguments.  First, Plaintiff
argues that these counterclaims are little more than claims for
compensation or "set-off," and that the NO LLCs explicitly waived
their right to bring such claims in the promissory notes.  Second,
Plaintiff argues that even if the NO LLCs did not waive these
claims, the agreements did not obligate him to provide the full
$166,666.67 to each NO LLC (or $500,000 total) but "only obligated
[P]laintiff to make advances to the defendants 'in an aggregate
principal amount outstanding **not to exceed**' the sum of $166,666.67
each (or $500,000 total)" (emphasis added).  Third, Plaintiff
argues that the "Default" section of the agreement does not include
a failure to contribute less than the full amount as a condition
that would trigger default.  Fourth, Plaintiff argues that neither
Chappapeela nor French Creek have standing to bring these
counterclaims based on breach of contract as there was no privity
of contract between Plaintiff and either of these parties as to the
loans.

In opposing the motion on these counterclaims, Defendants
respond only to the first of these arguments.  As to the
substantive law on this issue, Defendants argue that "compensation"
and "set-off" are legally-defined terms in Louisiana, and that
these claims are not "judgments that are 'liquidated and presently
due,'" and thus "[t]here is nothing to 'setoff.'"  Defendants also
contend from a policy perspective that upholding Plaintiff's

argument would be "tantamount to a waiver of every conceivable counterclaim that could be asserted by an obligor under the note."

Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due. LA. C.C. ART. 1893. Compensation extinguishes both obligations to the extent of the lesser amount. *Id.* Compensation may be renounced prospectively by agreement of the parties, and thus an agreement to do so as a condition to a loan would not be an affront to public policy. 5 LA. CIV. L. TREATISE, LAW OF OBLIGS. § 19.3 (2014). The NO LLCs have done exactly this where each entered a provision in its respective promissory note stating, "The maker hereof agrees that any and all obligations under this note shall not be subject to any claims of compensation or set-off whatsoever." (Rec. Doc. 100-3; Prom. Note). Plaintiff argues that this language precludes all counterclaims of Defendants.

The words of the contract here are not clear in intended scope to the degree that Plaintiff attempts to stretch them.[16] Despite the existence of the possibility of prospectively renouncing compensation in Louisiana law, this Court has been unable to find any case, nor has Plaintiff presented this Court with any case,

---

[16] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. C.C. ART. 2046.

interpreting such a situation under Louisiana law.[17]  Regardless,
the application of the contractual provision at issue would need
little explication if this was a routine situation of, *e.g.*, a
plaintiff claiming to be owed on a promissory note and a defendant
arguing that the plaintiff's debt to him in another transaction
should extinguish his obligation to the plaintiff to the extent of
the lesser amount.  *C.f. In re MMR Holding Corp.*, 199 B.R. 611
(M.D. La. Aug. 23, 1996) ("Newberg contends that it is legally
entitled to setoff moneys it advanced to MMR2 . . . in connection
with a construction project in Lorton, Virginia.").  The claims in
this case are not so simple, nor can the use of "whatsoever" in the
NO LLCs' renunciation of compensation be construed as an

_____

[17] Nor has Plaintiff presented any case dealing with a
comparable scenario under any other state's law.  The two cases
cited by Plaintiff, *LaSalle Bank Natl. Assoc. v. Sleutel*, 289
F.3d 837 (5th Cir. 2002) and *Haggard v. Bank of Ozarks, Inc.*, 668
F.3d 196 (5th Cir. 2012), both dealt with a situation in which a
guarantor was seeking to offset the amount owed under a
deficiency judgment by the difference between the fair market
appraisal and the amount paid in foreclosure for the subject
property pursuant to the operation of a specific provision of the
Texas Property Code.  The significance of the distinctions in
these cases in both facts and law from the present case renders
them an unsuitable guide as to the present provision's
application to the counterclaims of Defendants.  Although
apparently not relevant in those cases, the Court does note that
the contractual provisions in those cases explicitly waived not
only the affirmative defense of set-off, but also used expansive
language that the guarantor was waiving "all rights and remedies
. . ., including, without limitation: . . . (III) any defense,
right of offset, or other claim which Guarantor may have against
Borrower or which Borrower may have against Lender" (*Sleutel*) or
"any defenses, set-offs or counterclaims which may be available
to Borrower or any other person or entity" (*Haggard*).  *LaSalle
Bank Natl. Assoc.*, 289 F.3d at 840; *Haggard*, 668 F.3d at 202.

unambiguous bar to all possible counterclaims where the parties could have used more expansive language should they have intended the provision to be clear and explicit as to such a broad scope.

Thus, the Court at this point finds the evidence ambiguous as to how this provision is intended to extend to claims for damages based on breach of contract that exceed what would otherwise be subject to compensation, the claims of nullification of further obligations based on breach, or the barring of certain claims by Plaintiff (*e.g.*, raising delay as a default). *Lacrouts v. Succession of Longo*, 923 So.2d 717, 719 (La. App. 1 Cir. 2005) ("Summary judgment is rarely appropriate where a question remains as to the meaning of or intent behind certain provisions of a contract.") (citations omitted). Furthermore, the parties have not briefed how this provision does or does not apply to these claims except in the most general sense.

With that being said, the Court does grant this motion insofar as Defendants attempt to bring a counterclaim to extinguish any obligation owed to Plaintiff on amounts which Plaintiff already advanced to the NO LLCs and which came due on September 30, 2014. Plaintiff pointed to the straightforward provision of the promissory note that "all outstanding principal shall become due and payable on the fifth (5th) anniversary of the date hereof." The note was executed on September 30, 2009. Defendants have pointed to no provision of any contract to rebut a straightforward

14

reading of this provision, and their one objection raised as to the duty to pay on the outstanding principal is unavailing, as addressed above.

Plaintiff's second argument is that the obligation was not to provide $166,666.67 to each LLC, but rather to provide some amount not to exceed that amount. *See* (Rec. Doc. 100-5, at 5; Master Agreement at Article 2.02(a)) ("Burgers hereby agrees to make Advances to Owners during the Advance Period in an aggregate principal amount outstanding not to exceed the sum of [$166,666.67] (the 'Organizational Phase Loan') . . . .). In other words, Plaintiff argues that providing less than that amount does not evidence a failure by him to perform under the applicable agreement. While Plaintiff has faithfully repeated the language of the Master Agreements, the language of the Master Agreements also appears to provide that the actual amount contributed by Plaintiff to each NO LLC (up to the $166,666.67 amount) is determined by the properly-made advance requests of the NO LLCs – unless the agreements have otherwise been terminated, such as by default. (Rec. Doc. 100-5, at 5; Master Agreement at Article 2.02(c)) ("Upon the terms and subject to the conditions hereof, Owner, through Chappapeela, may request an advance in accordance with the provisions of Article 6."). As the default issue sits at the center of significant factual disputes regarding the actions of the parties, the Court goes no further in examining that issue. As to

15

Plaintiff's third argument, the Court notes only the broad provision that default can arise from "any default of any obligation." *Id*. at 9; Art. 7.01(e). This catch-all phrase obviates Plaintiff's observation that the "Default" section of the contract does not list his failure to contribute the full $166,666.67 toward each party as a default-causing event.

Finally, Plaintiff shows that Defendants as counterclaimants have failed to present an issue of fact as to any obligations undertaken to Chappapeela or French Creek, or those counterclaimants' privity to any such obligations by any other means. Chappapeela and French Creek did not present any documentation to the contrary (nor even briefed this issue).

Thus, Plaintiff's motion for summary judgment is granted to the extent that the breach of contract counterclaims of Chappapeela and French Creek premised on the promissory notes or Master Agreement are dismissed. It is also granted to the extent that the NO LLCs seek to extinguish any obligation to Plaintiff regarding the funds that Plaintiff has already contributed under the terms of the promissory notes and Master Agreement. It is denied in all other respects.

**c.  Counterclaims of GJFB and GJBUF regarding the Notice of Lis Pendens (no. 101)**

Finally, Plaintiff filed a motion for summary judgment seeking to dismiss the counterclaims of Defendants GJFB and GJBUF regarding

the notice of lis pendens filed by Plaintiff.  GJFB and GJBUF
allege in their counterclaim that Plaintiff wrongfully filed the
notice of lis pendens as to land other than the 21.41 acres
initially targeted for development[18] and that they have sustained
damages as a result.

Louisiana Code of Civil Procedure Article 3751 states the
following:

> The pendency of an action or proceeding in any court,
> state or federal, in this state affecting the title to,
> or asserting a mortgage or privilege on, immovable
> property does not constitute notice to a third person not
> a party thereto unless a notice of the pendency of the
> action or proceeding is made, and filed or recorded, as
> required by Article 3752.

LA. C.C.P. ART. 3751.

"The purpose of a notice of lis pendens is to give effective
notice to third persons of the pendency of litigation affecting
title to real property." *United States v. Jefferson*, 632 F. Supp.
2d 608, 614 (E.D. La. 2009) (quoting *Whitney Natl. Bank v.
McCrossen*, 635 So.2d 401, 403 (La. App. 4 Cir. 1994)).  "The notice
of lis pendens is not concerned with the merits of the litigation
which prompted its recordation." *Whitney Natl. Bank*, 635 So.2d at
403 (citing *Dane v. Doucet Bros. Const. Co., Inc.*, 396 So.2d 418,

---

[18] *See* "Background," *supra*.

420 (La. Ct. App. 1981)).

The issue before the Court is if there is a disputed issue of material fact as to whether Plaintiff's suit "affects title" of the property described in the notice of lis pendens within the meaning of Article 3751.  GJFB and GJBUF argue that Plaintiff improperly relies on "dicta" from an earlier opinion of this Court in which it addressed the motion for summary judgment brought by GJFB and GJBUF on, among other things, their claims regarding the notice of lis pendens.  The Court, in denying summary judgment, stated that it "finds that [Plaintiff's suit 'affects title' to the 704 acres within the meaning of Article 3751]." *Burgers v. Bickford*, no. 12-2009, 2014 WL 4186757, at *5 (E.D. La. Aug. 22, 2014).  GJFB and GJBUF argue that whether the litigation affects title to the entirety of the property described in the notice of lis pendens is an issue of fact that should be resolved at trial on the merits.

The Court does not need to rely on language in that previous opinion in today's decision.  The factual inquiry of whether litigation affects title as to certain property – whether a filing of a notice of lis pendens is proper at the outset of litigation – requires only comparing the allegations in the lawsuit and the corresponding property descriptions with the property description in the notice of lis pendens.

First, there is no dispute that Plaintiff's revocatory action and other claims include a request to have the "original options to

18

purchase" recognized as legal and binding and as part of his alleged "first lien mortgage and security agreement." (Rec. Doc. 31; Pl's. Amend. Comp., at §§ 66(g), 79, 80).  There is also no disputed issue of material fact that the property descriptions referenced in those options and in the notice of lis pendens are the same.  *Compare* (Rec. Doc. 101-5; Defs. Options w/ Prop. Descrip.) *with* (Rec. Doc. 111-4; Notice of Lis Pendens w/ Prop. Descrip.).[19]

Second, as to the legal inquiry of whether a claim falls under the domain of Article 3751, litigation concerning options on immovable property affects the title of that immovable property. For example, the recordation of such an option makes it effective against third persons as to the immovable property at issue.  LA. C.C. ART. 2629; *see also Ducote v. McCrossen*, 675 So.2d 817, 818-19 (La. App. 4 Cir. 1996) (finding that a suit seeking cancellation of an assignable lease of immovable property affects title of that property within the meaning of Article 3751 for similar reasons). Plaintiff's claims thus affect title to the property described in the notice of lis pendens, making the filing of the notice of lis

---

[19] The Court notes that GFJB and GJBUF have submitted as a disputed fact "[w]hether the 'options to purchase' between Defendants NOKWB, LLC, NOCAB, LLC[,] NODAB, LLC, and Defendants GJFB, LLC and GJBUF, LLC applied to land outside of the scope of or adjacent to Phase 1 or whether it only applied to Phase 1." (Rec. Doc. 108-2; Defs. Stmt. of Disputed / Contested Facts, at §6).  This sole, bare assertion, in the face of movant's documentation of the specific property descriptions, is not sufficient to show a genuine issue for trial.

pendens proper.   The clear language of this article requires no more, and GJFB and GJBUF have cited no authority to the contrary.[20]

Thus, the Court grants Plaintiff's motion for summary judgment dismissing the counterclaims brought by GJFB and GJBUF regarding the alleged wrongful filing of the notice of lis pendens and subsequent damages.

**d.  Plaintiff's Claims against the NO LLCs, Chappapeela, French Creek, Bickford and Hindman for Unjust Enrichment**

On August 22, 2014, this Court granted summary judgment for GJFB and GJBUF on Plaintiff's claims of unjust enrichment. *Burgers v. Bickford*, no. 12-2009, 2014 WL 4186757, at *3 (E.D. La. Aug. 22, 2014).  The Court did so on the purely legal basis that this remedy is "subsidiary and shall not be available if the law provides another remedy for the impoverishment . . . ." LA. C.C. ART. 2298. As claims under LUTPA relating to the same incidents against GJFB and GJBUF were available to Plaintiff, the Court found that other remedies at law were available.  *Burgers*, 2014 WL 4186757, at *3.

The same is true here.  Plaintiff has other remedies available for the impoverishment suffered.  Thus, the claim of unjust enrichment against Defendants must be dismissed.  LA. C.C. ART. 2298; *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 241, 242 (La.

---

[20] The Court's opinion today says nothing as to the merits of Plaintiff's claims concerning the property, nor does it in any way prejudice the ability of GJFB and GJBUF to have the notice of lis pendens removed if the requirements of Article 3753 are later fulfilled.

2010) ("Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment."); *Westbrook v. Pike Elec., LLC*, 799 F. Supp. 2d 665, 672 (E.D. La. June 30, 2011) ("Thus, considering plaintiff has alleged causes of action based on breach of contract, breach of implied duty of good faith and fair dealing and a violation of the Louisiana Unfair Trade Practices Act, a claim for unjust enrichment cannot lie and must be dismissed.").

**IV. CONCLUSION**

In summary, the following claims remain for trial:

1.   Plaintiff's claims against the NO LLCs, Chappapeela, French Creek, Bickford and Hindman for breach of contract;

2.   Plaintiff's claims against the NO LLCs, Chappapeela, French Creek, Bickford, Hindman, GJFB, and GJBUF for fraudulent inducement;

3.   Plaintiff's claims against the NO LLCs, Chappapeela, French Creek, Bickford, Hindman, GJFB, and GJBUF for violations of LUTPA;

4.   Plaintiff's claims against the NO LLCs and GJFB and GJBUF to revoke the partial cancellation of the options and to have the options recognized as binding;

5.   Plaintiff's claims to have his mortgage and security agreements recognized as valid as to all general tangibles and intangibles of the project;

6.   The claims of the NO LLCs, French Creek, and Chappapeela
     against Plaintiff for breach of contract.[21]

     Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment to Enforce Promissory Notes and for Summary Judgment on Defendants' Counterclaims (Rec. Doc. 100)** is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** regarding the enforcement of the terms of the promissory notes; each NO LLC is liable to Plaintiff for $128,000 in outstanding principal and $12,800 in attorneys' fees. It is **GRANTED** to the extent that the breach of contract counterclaims of Chappapeela and French Creek premised on the promissory notes or Master Agreement and any counterclaims brought by the NO LLCs attempting to extinguish their obligations to Plaintiff regarding the funds that Plaintiff has already contributed under the terms of the promissory notes and Master Agreement are **DISMISSED**. It is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment on Counterclaims of Defendants GJFB, LLC and GJBUF, LLC (Rec. Doc.**

---

[21] Any such claims of Chappapeela or French Creek are preserved for trial only to the extent that they do not rely on the promissory notes or Master Agreement.

The third party complaint filed by GJFB and GJBUF seeking a writ of mandamus to have the Clerk of Court of Tangipahoa Parish remove the notice of lis pendens is not included on this list of claims left for trial as the cancellation of such a notice becomes available upon judgment in the underlying action. LA. C.C.P. ART. 3753.

**101)** is **GRANTED**.   The counterclaims brought by GJFB and GJBUF regarding the alleged wrongful filing of the notice of lis pendens and subsequent damages are **DISMISSED**.

April 15, 2015

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE